## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**MBD 05-10052**

### ORDER TO SHOW CAUSE

**In Re: Francis J. Lafayette**

Per Curiam

   YOU ARE HEREBY ORDERED to show cause in writing within thirty (30) days of this Order why you should not be disciplined by this court for violation of Rules 1.1, 1.3, 1.4(a), and 8.4(a), (c) and (h) of the Massachusetts Rules of Professional Conduct, S.J.C, Rule 3:07, as alleged by the United States trustee.



William G. Young
Chief Judge

FEBRUARY 7, 2005
Date

By: _____
Deputy Clerk

cc: Honorable Henry Boroff

# UNITED STATES BANKRUPTCY COURT

District of Massachusetts

HAROLD DONOHUE FEDERAL BUILDING & COURTHOUSE

595 MAIN STREET

WORCESTER, MASSACHUSETTS 01608-2076

Judge_Henry_Boroff@mab.uscourts.gov

Henry J. Boroff
Bankruptcy Judge

508-770-8940
Facsimile 508-793-0183

January 25, 2005

Honorable William G. Young, Chief Judge
United States District Court
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 5710
Boston, Massachusetts 02210

**05** MBD **10052**

Re:    Francis J. Lafayette, Esq.

Dear Chief Judge Young:

It is my unfortunate duty to submit the following report, and proposed findings of fact and conclusions of law, to the District Court with respect to attorney Francis J. Lafayette, pursuant to the provisions of Rule 83.6(4) of the Local Rules of the United States District Court for the District of Massachusetts (the "District Court Rules") and at the request of the Office of the United States trustee, a division of the Department of Justice.[1]  A copy of the request by the United States trustee for referral to the District Court is contained herein. I have allowed the motion, and, by this letter, grant the relief requested.

I have concluded, pursuant to a broad reading of the recent First Circuit case of Sheridan v. Michels (In re Sheridan), 362 F.3d 96 (1st Cir. 2004), that I have only noncore jurisdiction with respect to attorney discipline.[2]  Accordingly, I enclose herein

---

[1] I am advised by counsel to the United States trustee that a referral has also been made to the Massachusetts Board of Bar Overseers, but I am not aware of the status of those proceedings.

[2] See also In re LaFrance, et. al., 311 B.R. 1, 25 (Bankr. D. Mass. 1994). The Sheridan holding could be read more narrowly to apply only to those situations where the proposed discipline has a remote or overly speculative effect upon closed bankruptcy cases. This Court, however, is mindful both that the District Court Rules do not provide for delegation of attorney discipline to the Massachusetts bankruptcy courts and that the United States trustee specifically requested referral of the matter to the District Court.

Honorable William G. Young, Chief Judge
January 25, 2005
Page Two


my Memorandum of Decision, dated June 10, 2004, in the cases of <u>In re LaFrance, et. al.</u> (Case No. 02-42450-HJB, et. seq.), 311 B.R. 1, (Bankr. D. Mass. 2004) which I respectfully request be accepted as my proposed findings of fact.  <u>Id.</u> at 23-24. [3]

        Based on those findings, if adopted, I propose that the District Court conclude that Attorney Lafayette has violated Rules 1.1, 1.3, 1.4(a), and 8.4 (a), (c) and (h) of the Massachusetts Rules of Professional Conduct, S.J.C. Rule 3:07, as alleged by the United States trustee in its enclosed motion; and should be disciplined, pursuant to Rule 83.6(4) of the District Court Rules in such manner as the District Court may deem meet and just.

        Please advise if you require any further findings or information.


                        Very truly yours,



                        Henry J. Boroff


cc:    Francis J. Lafayette, Esq.  (w/o encl.)
       Stephen Meunier, Esq.  (w/o encl.)
       Daniel C. Crane, Bar Counsel


---

[3]The June 10, 2004 order is not on appeal, *per se.*  Attorney Lafayette filed a notice of appeal, but did so untimely.  When the appeal was dismissed by this Court, pursuant to District Court Rule 203, Attorney Lafayette filed a motion for reconsideration of the dismissal order, seeking an enlargement of time pursuant to Fed.  R.  Bankr.  P. 8002(c).  I denied that motion by order and Memorandum of Decision, dated July 8, 2004, a copy of which is enclosed herein.  The July 8, 2004 order has been appealed, and the appeal is pending before the District Court (Ponsor, J.).

7/8/04

# United States Bankruptcy Court

## District of Massachusetts

| | | |
|---|---|---|
| In re:<br><br>JOSEPH L. LaFRANCE,<br><br>Debtor | ) ) ) ) ) ) | Chapter 13<br><br>Case No. 02-42450-HJB |
| In re:<br><br>MARTA L. OYOLA,<br><br>Debtor | ) ) ) ) ) ) | Chapter 13<br><br>Case No. 02-45398-HJB |
| In re:<br><br>HECTOR L. ROLON,<br><br>Debtor | ) ) ) ) ) ) | Chapter 13<br><br>Case No. 02-45994-HJB |
| In re:<br><br>KATHLEEN M. DAIGNEAULT,<br><br>Debtor | ) ) ) ) ) ) ) | Chapter 13<br><br>Case No. 02-46689-HJB |
| In re:<br><br>PETER AND DENISE CACI,<br><br>Debtor | ) ) ) ) ) ) ) | Chapter 7<br><br>Case No. 02-47249-HJB |



In re:

MARK BENNETT and
ANGELA BENNETT

Debtor

Chapter 13

Case No. 03-40074-HJB

In re:

STEFAN DAVIS,

Debtor

Chapter 13

Case No. 03-40199-HJB

## **MEMORANDUM OF DECISION**

Before the Court is a "Motion for Reconsideration and to Allow Late Filing of Appeal on Grounds of Excusable Neglect (Fed. R. Bankr. P. 8002(c))" (the "Motion") filed by Attorney Francis Lafayette ("Attorney Lafayette"). The Motion does present an ironic picture, in that it seeks leave to file late an appeal of this Court's order of June 10, 2004 which, in turn, took action to ameliorate a variety of similar acts of neglect by Attorney Lafayette. See In re LaFrance, et. al., 2004 WL 1376363 (Bankr. D. Mass.).

As in the underlying case(s), Attorney Lafayette cites his allegedly poor physical condition and the side effects of medication as cause for his having failed to meet this important deadline. In the underlying cases, he claimed to have suffered from dental and back problems. Here, he claims to suffer from diabetes and polyneuropathy.

2

As in the LaFrance decision, this Court finds the existence of the alleged illnesses insufficient to justify Attorney Lafayette's failure to timely act. It is unlikely that either or any of these alleged conditions interfered in any material way with his ability to file a timely notice of appeal. This Court has checked with the records of the Clerk's Office and is advised (and takes judicial notice) that during the period of June 10, 2004 to June 21, 2004 in which the filing would have been timely, Attorney Lafayette:

1.  appeared before this Court on June 16, 2004 in five (5) separate hearings; and

2.  electronically filed eighty three (83) pleadings, five (5) of which were new bankruptcy cases, spread throughout the relevant period.[1]

A copy of that listing is attached hereto.

In light of the foregoing, this Court finds that Attorney Lafayette's failure to timely file his notice of appeal was within his control and resulted from his own inexcusable negligence. The Motion will, accordingly, be denied. A separate Order shall issue.

DATED:   July 8, 2004

Henry J. Boroff
United States Bankruptcy Judge

cc:   Francis Lafayette, Esq.
      Denise Pappalardo, Chapter 13 trustee
      United States trustee
      Debtors

[1] Eighteen were filed on weekend days.

3

Case 1:05-mc-10052-WGY   Document 1-3   Filed 02/07/2005   Page 4 of 15

# Report of Filings by Attorney Frances Lafayette
## June 10, 2004 through June 21, 2004



June 10, 2004

| | | |
|---|---|---|
| **03-44298** | | |
| 53 | Motion to Reconsider | Bennett |
| 54 | Declaration Re: Electronic Filing | Bennett |
| **03-45556** | | |
| 35 | Motion to Reconsider | Gorski |
| 36 | Declaration Re: Electronic Filing | Gorski |
| **04-42668** | | |
| 11 | Schedules A-J | Adasiewicz |
| 12 | Chapter 13 Agreement between debtor and counsel | Adasiewicz |
| 13 | Chapter 13 Plan | Adasiewicz |
| 14 | Motion to Extend | Adasiewicz |
| 15 | Declaration Re: Electronic Filing | Adasiewicz |
| **04-43304** | | |
| 1 | Voluntary Petition (Chapter 13)(Attorney) | Pascale |
| 3 | Statement of Social Security Number(s) | Pascale |
| 4 | Declaration Re: Electronic Filing | Pascale |
| **04-43338** | | |
| 1 | Voluntary Petition (Chapter 13)(Attorney) | Cabrera |
| 2 | Statement of Social Security Number(s) | Cabrera |
| 3 | Declaration Re: Electronic Filing | Cabrera |

Total Filings on: **June 10, 2004    15**



June 11, 2004

**03-46928**

| 24 | Motion to Convert Case to Chapter 7 | Moccio |
|----|-------------------------------------|--------|
| 25 | Declaration Re: Electronic Filing   | Moccio |

**03-47195**

| 37 | Opposition | Kelly |
|----|------------|-------|
| 38 | Opposition | Kelly |

Total Filings on:   **June 11, 2004**   **4**



**June 13, 2004**

**04-43053**

| | | |
|---|---|---|
| 8 | Schedules A-J | McCarthy |
| 9 | Chapter 13 Plan | McCarthy |
| 10 | Motion to Extend | McCarthy |
| 11 | Chapter 13 Agreement between debtor and counsel | McCarthy |
| 12 | Declaration Re: Electronic Filing | McCarthy |

Total Filings on:    **June 13, 2004      5**



June 14, 2004

**02-45468**
123    Stipulation                                         Babb

**04-43026**
9    Schedules A-J                                       Austin
10   Declaration Re: Electronic Filing                   Austin

**04-43053**
13   Notice                                              McCarthy

Total Filings on:    **June 14, 2004**    **4**



**02-47473**
73   Opposition                                        Martin

**04-41885**
19   Amended Chapter 13 Plan                           Mulverhill
20   Motion to Modify Plan                             Mulverhill
21   Amended Schedules                                 Mulverhill
22   Motion to Amend Schedules                         Mulverhill
23   Declaration Re: Electronic Filing                 Mulverhill

Total Filings on:   **June 15, 2004**   **6**



**June 16, 2004**

**02-44216**
| | | |
|---|---|---|
| 50 | Chapter 13 Trustee's Motion for Order Dismissing Case | Ranger |

**03-47113**
| | | |
|---|---|---|
| 52 | Opposition | Dion |
| 53 | Opposition | Dion |

**04-04300**
| | | |
|---|---|---|
| 14 | Stipulation | Moreno |

**04-40724**
| | | |
|---|---|---|
| 65 | Motion to Extend | Buckert |
| 66 | Motion to Extend | Buckert |
| 67 | Exhibit A | Buckert |
| 68 | Amended Schedules | Buckert |
| 69 | Motion to Amend | Buckert |

**04-42835**
| | | |
|---|---|---|
| 8 | Notice | Yankson |

**04-43426**
| | | |
|---|---|---|
| 1 | Voluntary Petition (Chapter 7)(Attorney) | Wheeler |
| 3 | Statement of Social Security Number(s) | Wheeler |
| 4 | Declaration Re: Electronic Filing | Wheeler |

**04-43440**
| | | |
|---|---|---|
| 1 | Voluntary Petition (Chapter 13)(Attorney) | Arnold |
| 2 | Chapter 13 Plan | Arnold |
| 4 | Statement of Social Security Number(s) | Arnold |
| 5 | Declaration Re: Electronic Filing | Arnold |

Total Filings on:   **June 16, 2004      17**



**03-46552**

| | | |
|---|---|---|
| 73 | Amended Chapter 13 Plan | Bouffard |
| 74 | Motion to Amend | Bouffard |
| 75 | Amended Schedules | Bouffard |
| 76 | Motion to Amend | Bouffard |
| 77 | Certificate of Service | Bouffard |
| 78 | Declaration Re: Electronic Filing | Bouffard |

**04-40833**

| | | |
|---|---|---|
| 21 | Opposition | Fenner |

Total Filings on:    **June 17, 2004**    **7**


**June 18, 2004**

**04-41219**
| | | |
|---|---|---|
| 41 | Stipulation | Kelley |
| 42 | Motion to Approve | Kelley |

Total Filings on:   **June 18, 2004**   **2**



June 19, 2004

**03-46346**

| 30 | Objection to Claim | Provost-Lamy |
| 31 | Declaration Re: Electronic Filing | Provost-Lamy |

**03-46928**

| 31 | Notice of No Post Petition Creditors | Moccio |
| 32 | Declaration Re: Electronic Filing | Moccio |

**04-42636**

| 12 | Amended Chapter 13 Plan | Rolo |
| 13 | Motion to Amend | Rolo |
| 14 | Amended Schedules | Rolo |
| 15 | Motion to Amend Schedules | Rolo |
| 16 | Declaration Re: Electronic Filing | Rolo |

**04-43537**

| 1 | Voluntary Petition (Chapter 7)(Attorney) | Woods |
| 3 | Statement of Social Security Number(s) | Woods |
| 4 | Declaration Re: Electronic Filing | Woods |

Total Filings on:    **June 19, 2004**    **12**

**June 20, 2004**

**04-40809**
20     Opposition                                                                Price

Total Filings on:     **June 20, 2004**        **1**

**June 21, 2004**

**01-43979**
| | | |
|---|---|---|
| 54 | Notice of Post Petition Creditors | Moreno |
| 55 | Statement of Intent | Moreno |
| 56 | Declaration Re: Electronic Filing | Moreno |

**02-40021**
| | | |
|---|---|---|
| 73 | Motion to Incur Debt | Barrett |

**02-45958**
| | | |
|---|---|---|
| 77 | Opposition | Livingstone |

**02-46690**
| | | |
|---|---|---|
| 69 | Motion to Continue/Reschedule Hearing | Knoll |
| 71 | Opposition | Knoll |
| 72 | Certificate of Service | Knoll |

**04-40249**
| | | |
|---|---|---|
| 33 | Certificate of Service | Spears |

**04-41129**
| | | |
|---|---|---|
| 13 | Motion to Appear Telephonically | Beaucage |

Total Filings on:   **June 21, 2004**   **10**

Total Filings for this report:     **83**

# United States Bankruptcy Court
## District of Massachusetts

| | | |
|---|---|---|
| In re:<br><br>JOSEPH L. LaFRANCE,<br><br>Debtor | ) ) ) ) ) ) | Chapter 13<br><br>Case No. 02-42450-HJB |
| In re:<br><br>MARTA L. OYOLA,<br><br>Debtor | ) ) ) ) ) ) | Chapter 13<br><br>Case No. 02-45398-HJB |
| In re:<br><br>HECTOR L. ROLON,<br><br>Debtor | ) ) ) ) ) ) | Chapter 13<br><br>Case No. 02-45994-HJB |
| In re:<br><br>KATHLEEN M. DAIGNEAULT,<br><br>Debtor | ) ) ) ) ) ) ) | Chapter 13<br><br>Case No. 02-46689-HJB |
| In re:<br><br>PETER AND DENISE CACI,<br><br>Debtor | ) ) ) ) ) ) ) | Chapter 7<br><br>Case No. 02-47249 |

In re:

MARK BENNETT and
ANGELA BENNETT

    Debtor

Chapter 13

Case No. 03-40074-HJB

In re:

STEFAN DAVIS,

    Debtor

Chapter 13

Case No. 03-40199-HJB

## MEMORANDUM OF DECISION

Before this Court are fee applications filed by Attorney Francis Lafayette ("Attorney Lafayette") in each of the above-captioned cases. Also before this Court is its Case Management Order, dated June 24, 2003 (the "Case Management Order"), ordering Attorney Lafayette to show cause why he should not file additional fee applications in all pending cases in which he serves as counsel to the debtor and has fees unpaid and why the provisions of Massachusetts Local Bankruptcy Rule ("MBLR")13-7(b) should not be suspended in all cases which Attorney Lafayette may hereafter file in this district.

Pursuant to its order of this date, and as explained below, this Court now disallows compensation for Attorney Lafayette in each of the instant cases, in whole or in part; orders disgorgement of fees previously received by Attorney Lafayette, as may be applicable; orders Attorney Lafayette to file fee applications in all pending cases in which he serves as counsel to the debtor and has fees still unpaid; and suspends the provisions of MBLR

2

13-7(b) in all cases which Attorney Lafayette may hereafter file in this District until further court order. This Court's actions are authorized by 28 U.S.C. §157(b)(2)(A) and (B), 11 U.S.C. §§ 327, 328 and 329 and MLRB 13-7(b).

## I.   FACT PATTERNS

The relevant facts are either: (1) not materially disputed, being drawn from the docket or pleadings of each relevant case, or from testimony or supplemental pleadings provided by Attorney Lafayette as described below; or (2) constitute this Court's findings of fact, pursuant to Fed. R. Bankr. P. 7052, as made applicable by Fed. R. Bankr. P. 9014, based on the evidentiary hearings described below.

### A.   Joseph L. LaFrance

Joseph L. LaFrance filed a Chapter 13 case on April 19, 2002 and was represented by Attorney Lafayette. Shortly thereafter, Attorney Lafayette filed a "Disclosure of Compensation of Attorney for Debtor," as required by Federal Rule of Bankruptcy Procedure 2016(b) (the "LaFrance Fee Disclosure"). According to Paragraph 1 of the LaFrance Fee Disclosure, Attorney Lafayette agreed to charge $2,500 for preconfirmation and $500 for postconfirmation work, of which Attorney Lafayette had received $415 on account. The balance due was set forth as follows:

$3,000 less $415 paid leaving a balance of $2,085 (pre-confirmation and $500.00 post-confirmation) for services described in (4)(a)-(c) below plus copies of @ $.15 per page; incoming telecopier transmissions of $.15/page; auto mileage at the rate set forth from time to time by 41 CFR sec. 301-4.2 ($ .31 per mile); costs incurred for parking and out-of-pocket disbursements made by Attorney, including, but not limited to, filing and witness fees, service of process fees, expenses of depositions, investigative expenses,

3

expert witness fees, charges for telephone, and incidental expenses. Time charges for additional legal services other than listed herein will be an hourly rate of $310.00/hour for additional work other than as stated in (4)(a)-(c) below which shall increase by $10 on each November 11. There is no additional work contemplated at date of this statement. Adversary Proceedings are not included in this fee and client agrees that attorney will not be required go appear in or/defend same.

LaFrance Fee Disclosure, Par. 1.[1]

Paragraph 5 of the LaFrance Fee Disclosure indicates that the preconfirmation work for which the $2,500 was charged would be limited to: (a) legal advice; and (b) preparation and filing of the bankruptcy petition, schedules, statement of affairs and plan, and representation of the debtor at the meeting required under 11 U.S.C. § 341 and adjournments thereof. Indeed, Subparagraph (e) provides: "Attorney fees are estimated and assume no objections or other contests such as motions for relief from stay; trustee motions to dismiss; objections to claims; [or] valuations hearings . . . ." Pursuant to Paragraph 6, "[r]epresentation of debtor in Adversary Proceedings and contested matters" is specifically excluded.[2]

---

[1]The Court has not bothered to insert the familiar term "sic" in the myriad of locations where grammar or consistency is lacking or absent. In but one example, the paragraph twice refers to "4(a)-(c) below." There is no "4(a)-(c)" in the document.

[2]Not raised, either in the objection of the Chapter 13 trustee to Attorney Lafayette's fee application or in the Case Management Order described below, is whether this kind of "parsing" of services typically rendered in Chapter 13 cases is permissable. See In re Egwim, 291 B.R. 559 (Bankr. N.D. Ga. 2003); In re Castorena, et al., 270 B.R. 504 (Bankr. D. Idaho 2001).

4

The case proceeded rather unremarkably to confirmation.[3]   The progress of the case postconfirmation, however, was more troublesome. Shortly after confirmation, the debtor fell behind in his payments to the first mortgagee on his residence. In October of 2002, the first mortgagee sought relief from the automatic stay in order to foreclose. In December, following a hearing on that request, the Court approved a stipulation between the parties that, in the event of the debtor's failure to cure his postpetition default on a predetermined schedule, relief would be granted on notice of default by the first mortgagee. That notice issued in February of 2003 and relief from the automatic stay was granted shortly thereafter.

In the nick of time, the debtor was able to locate a buyer for the property and Attorney Lafayette filed a motion for leave to sell the property in late February of 2003. The sale was subsequently approved by the Court in April of 2003. However, in the motion, Attorney Lafayette requested that the Court approve compensation in the amount of $2,000 for services rendered "as an administrative expense to the Debtor-in-possession." Accordingly, on April 10, 2003, the Court ordered Attorney Lafayette to file a fee application within 14 days.[4]

On April 23, 2003, 13 days after the issuance of the order, Attorney Lafayette sought leave to file his fee application one day late, complaining that an "ongoing

---

[3]The Chapter 13 trustee did object to the first plan filed, complaining that the expenses set forth on Schedule J included items not necessary for the debtor's support. The matter was resolved, however, with the filing of an amended Schedule J and a modified plan, increasing the dividend to creditors.

[4]The order entered on April 11, 2003.

5

abscessing tooth" had caused him to feel ill and lose much time from his desk.[5]  The application, now before the Court, was indeed filed on April 24, 2003. It seeks total compensation in the sum of $4,458.16 in compensation, of which $2,595.44 remains unpaid. Of the sum sought to be allowed, $4,204.00 is the component sought for professional services. Attorney Lafayette claims he devoted 12.85 hours, at rates ranging from $310 to $320 per hour; and paralegals devoted 4.3 hours at rates ranging from $35 to $65 per hour.  Yet a close examination of the time entries reveals a curious division of labor. Attorney Lafayette, at his elevated rate, conducted all of the initial meetings with the debtor and prepared the schedules and statement of affairs. But when that debtor required a motion for avoidance of a judicial lien, that work was done by a paralegal with no follow-up time entry showing attorney supervision. Further, although the time entries reflect that Attorney Lafayette reviewed the first mortgagee's motion for relief from the automatic stay (for 0.1 hours), there are no time entries reflecting a conversation with the client, and the response was prepared by a paralegal (for 0.1 hours) with no reflection of attorney supervision.  And, even more troubling, between the date of the filing of the motion for relief from stay and the hearing on that motion at which the agreement for entry into the stipulation was made, there is no indication of any conversations with the debtor that would have granted Attorney Lafayette the facts necessary to oppose the motion or agree to the terms of the stipulation in a manner consistent with Fed. R. Bankr. P. 9011.

---

[5]The motion was allowed on April 24, 2003, but the court docket does not show action on the motion.  In any event, Attorney Lafayette's request was moot, as the motion sought leave to file the motion on the 14th day after issuance of the order, within its original scope.

The Chapter 13 trustee objects to the fee application. First and foremost, she maintains that the hourly rate charged by Attorney Lafayette is excessive. She refers to a recent, unpublished decision by Judge Rosenthal in this district, who ruled that Attorney Lafayette's rate was excessive and reduced it to $225 per hour. The Chapter 13 trustee further complains that, while the LaFrance Fee Disclosure sets forth a retainer of $415, the fee application recites that retainer as $600 in one location and $685 ($500 plus the filing fee) in another. She also complains of two hours of duplicate time entries by Attorney Lafayette and his paralegals.

The fee application was subsequently included in the Case Management Order, dated June 24, 2003, further described below.

### B.    Marta L. Oyola

Marta L. Oyola filed a Chapter 13 case on September 4, 2002 and was represented by Attorney Lafayette. Shortly thereafter, Attorney Lafayette filed a "Disclosure of Compensation of Attorney for Debtor" (the "Oyola Fee Disclosure"). The Oyola Fee Disclosure was similar in form and content to the Lafrance Fee Disclosure, containing the same infirmities and the same hourly rate. The retainer was here represented to be $500, against a fee of $3,000 with the same conditions set forth in the LaFrance Fee Disclosure.

The section 341 Meeting was conducted on October 23, 2002. At that meeting, the Chapter 13 trustee complained that the debtor had claimed an exemption in her residence in the amount of $65,000, pursuant to 11 U.S.C. § 522(d)(1). Because the applicable exemption was then limited to $17,425, and therefore overstated by $47,575, the Chapter 13 trustee asked that the debtor's Schedule C be amended. It was indeed amended. On

7

November 1, 2002, Attorney Lafayette caused an amended Schedule C to be filed, this time seeking an exemption of $81,000, pursuant to 11 U.S.C. §522(d)(1). The Chapter 13 trustee objected again. Yet, between the date of the filing of her objection, January 29, 2003, and the hearing thereon on March 10, 2003, no further amendment was filed. Accordingly, the Chapter 13 trustee was compelled to appear and argue the matter. This Court swiftly sustained the Chapter 13 trustee's objection and ordered the debtor to file an amended Schedule C within 14 days.

Referring specifically to the foregoing undisputed (and undisputable) facts, the Chapter 13 trustee filed, on March 21, 2003, the instant "Motion of Chapter 13 Trustee for Order Requiring Counsel to Disgorge Retainer."[6] In summary, she contends that the debtor deserved better. On April 16, 2003, Attorney Lafayette filed a "Response to Motion of Chapter 13 Trustee for Order Requiring Counsel to Disgorge Retainer."[7] In that response, Attorney Lafayette makes three points. First, although he concedes the foregoing facts, Attorney Lafayette claims in three different paragraphs of his response that his errors were not the result of "careless"(sic).[8] Second, he argues that any error was the fault of his computer software, which was, he says, unable to integrate unique circumstances of the case into its calculation. Attorney Lafayette concedes, however, that

---

[6] Presumably, the Chapter 13 trustee also intended that the Court disallow all of Attorney Lafayette's compensation, not just the retainer.

[7] Two additional observations should be made. The response was filed 16 days late; it was due on April 1, 2003. See Mass. Bankr. L. R. ("MBLR") 9013-1(d). And, although transmission of the Response by facsimile was permitted by MBLR 5005-4, the transmission date listed at the top of the pleading would suggest a filing date three (3) years earlier.

[8] The irony of these typographical errors is not lost on the Court.

he should have overridden the program and listed the exemption as "unknown". Third, he

alleges:

> The debtor's counsel is currently experiencing a serious dental issue
> which requires the extraction of two teeth. The debtor's counsel has been
> prescribed a serious pain medication which is intended to reduce the pain
> associated with the tooth abscess as the abscess enters the nerve of the
> teeth. Debtor's counsel was at the time of preparation of the documents in
> great pain and used the prescribed medication to reduce the pain. The
> medication has the effect of creating drowsiness and at the time of
> preparation of the schedules and plan and other parts (sic) the influence of
> the narcotic pain medication apparently caused debtor's counsel to be less
> alert than he was aware of. Debtor's counsel has met with debtor and
> prepare (sic) amended documents, without charge to the debtor for time or
> costs.

The Court responded on April 16, 2003 by ordering Attorney Lafayette to file a fee

application. That application seeks total compensation in the sum of $6,104.31 of which

the sum of $4,170.25 remains unpaid. Of the sum sought to be allowed, $5,655.25 is the

component sought for professional services. Attorney Lafayette claims he devoted 17.15

hours, at rates ranging from $310 to $320 per hour, and paralegals devoted 3.45 hours at

rates ranging from $45 to $65 per hour. An additional sum of $449.06 was sought for

reimbursement of expenses.

The fee application was subsequently included in the Case Management Order,

dated June 24, 2003, further described below.

## C.    Hector L. Rolon

Hector L. Rolon filed a Chapter 7 case on October 1, 2002 and was represented by

Attorney Lafayette. Shortly thereafter, Attorney Lafayette caused the case to be converted

to one under Chapter 13 and filed a "Disclosure of Attorney Compensation for Debtor" (the

9

"Rolon Fee Disclosure"). The Rolon Fee Disclosure was similar in form and content to the LaFrance and Oyola Fee Disclosures, containing the same infirmities and the same hourly rate. The retainer was here represented to be $500, against a fee of $3,000 with the same conditions set forth in the LaFrance and Oyola Fee Disclosures.

On December 20, 2002, the Chapter 13 trustee filed a motion to dismiss the Chapter 13 case.[9] She explained that at the section 341 meeting, a month earlier, she had requested that the debtor file amended Schedules C and J and produce a copy of his 2001 tax returns, evidence of the assessed value of his residence and financial statements produced in a recent divorce proceeding – but none of these requests had been complied with. She maintained that the debtor's failure to cooperate constituted an unreasonable delay prejudicial to creditors and a basis for dismissal under 11 U.S.C. §1307(c)(1). The opposition filed by Attorney Lafayette on December 23, 2002 explained that he and the debtor had been unable to meet due to the requirements of the debtor's employment (which kept the debtor out of town) and due to "recent winter storms." Attorney Lafayette "expected" that the amendments would be filed as soon as possible, but said nothing about the requested documentation. The Chapter 13 trustee's motion was heard on February 12, 2003. Now almost two months since the filing of the opposition, Attorney Lafayette had still not filed the requested documentation, and the Court ordered the debtor to comply on or before February 14, 2003.

---

[9]This was in fact the second such motion. The first was on account of the debtor's failure to provide evidence of insurance on his property. That motion was resolved by agreement between the parties.

10

By March 7, 2003, the debtor had still not complied and the Chapter 13 trustee had

had enough. She filed her third motion to dismiss, complaining that the requested

amendments to the Schedules had not been filed and the requested documents (including

by now the statements for the fourth quarter of 2002) had not been produced. The

Chapter 13 trustee also filed a motion requesting the Court to order Attorney Lafayette to

file a fee application. She requested that any compensation be disallowed, noting also

that:

1.  the original case had been filed as a Chapter 7, notwithstanding the fact that
    the debtor could not have received a Chapter 7 discharge because he had
    filed a previous Chapter 7 case and received a discharge within the past 6
    years;[10]

2.  the reason for the Chapter 13 trustee's request that Attorney Lafayette
    amend Schedule C (still not done almost 4 months after the request) was
    that the original Schedule C had listed, pursuant to §522(d)(2), an obviously
    excessive exemption in the amount of $64,315.18 in a truck;[11] and

3.  the reason for the Chapter 13 trustee's request that Attorney Lafayette
    amend Schedule I (still not done almost 4 months after the request) was that
    the Debtor claimed in the original Schedule I that he worked for Webster
    Trucking, but testified at the section 341 meeting that he had not worked
    there since November of 2002.

Finally, the Chapter 13 trustee objected to confirmation of the debtor's plan, for the reasons

stated above.

Attorney Lafayette failed to timely respond to either of the foregoing motions.

Accordingly, on March 31, 2003, the Court allowed the Chapter 13 trustee's motion to

---

[10] The debtor was also represented in the previous case by Attorney Lafayette.
Furthermore, the discharge in the previous Chapter 7 case had issued only a few months before
the filing of the instant case.

[11] The available exemption under § 522(d)(2) was then $2,775.

dismiss, as well as her motion requesting that Attorney Lafayette be ordered to file a fee application. The Clerk's Office had previously set the objection to confirmation for hearing on April 2, 2003, At the hearing, the Court, not realizing the case was dismissed, again ordered the Debtor to file amended Schedules C and I, this time before April 23, 2003. Amended Schedules were finally filed on April 22, 2003. However, Schedule I still reflected the debtor with the wrong employer.

On April 25, 2003, Attorney Lafayette filed a motion to vacate the dismissal order of March 31, 2003. As grounds, Attorney Lafayette asserted that his opposition to the Chapter 13 trustee's motion to dismiss was timely filed by facsimile, but was for some reason not reflected on the Court docket.[12] He further noted that the amended Schedules were indeed filed in response to the Court's order of April 2, 2003. Over the objection of the Chapter 13 trustee, and notwithstanding Attorney Lafayette's continued failure to properly list the debtor's place of employment almost seven (7) months after his error was brought to his attention, the Court vacated the dismissal order on May 14, 2003. The debtor's Chapter 13 plan was subsequently confirmed on August 26, 2003.

Attorney Lafayette filed his fee application, now before the Court, on May 14, 2003. It seeks total compensation in the sum of $4,839.61, of which $4,109.25 remains unpaid. Of the sum sought to be allowed, $4,669.25 is the component sought for professional services. Attorney Lafayette claims he devoted 14.4 hours, at rates ranging from $310 to $320 per hour, and paralegals devoted 2.05 hours at rates ranging from $35 to $65 per

---

[12]There is no evidence that Attorney Lafayette filed this opposition.

12

hour. An additional sum of $170.56 was sought for reimbursement of expenses. Attorney Lafayette reported payments received in the amount of $560.00

The fee application was subsequently included in the Case Management Order, dated June 24, 2003, further described below.

### D.   Kathleen M. Daigneault

Kathleen M. Daigneault filed a Chapter 13 case on November 1, 2002 and was represented by Attorney Lafayette.   Shortly thereafter, Attorney Lafayette filed a "Disclosure of Attorney Compensation for Debtor" (the "Daigneault Fee Disclosure"). The Daigneault Fee Disclosure was similar in form and content to the LaFrance, Oyola and Rolon Fee Disclosures, containing the same infirmities and the same hourly rate. The retainer was here represented to be $500, against a fee of $3,000 with the same conditions set forth in the LaFrance, Oyola and Rolon Fee Disclosures.

On January 17, 2003, the Chapter 13 trustee timely filed an objection to confirmation of the debtor's plan. She complained that the debtor had filed a 36 month plan; yet, the debtor's husband (with whom she was living) was the recipient of a lottery prize with a gross payment of $50,000 per year for 20 years. Accordingly, the dividend to unsecured creditors, which all agreed should be at 100%, should have been payable in a lump sum payment on the next lottery payoff date. On March 12, 2003, after hearing, the Court sustained the Chapter 13 trustee's objection and ordered the debtor to file an amended plan within 30 days.

The debtor failed to comply with the March 12, 2003 order. No amended plan was filed. On June 3, 2003, this Court issued, *sua sponte*, an order to show cause on June 18,

13

2003 why the "debtor's Chapter 13 petition should not be converted to a petition under Chapter 7 or dismissed for failure to comply with this Court's order of March 12, 2003 requiring the filing of a plan within 30 days of the order." An amended plan was then late-filed on June 9, 2003. At the June 18, 2003 hearing, the Court ruled that cause for dismissal or conversion was not shown, but ordered Attorney Lafayette to file a fee application on or before July 9, 2003.

No fee application was filed by the July 9, 2003 deadline. On July 15, 2003, six (6) days later, Attorney Lafayette filed a motion to enlarge the time for filing a fee application to July 16, 2003. The stated grounds were that "Counsel's paralegal became ill at the beginning of last week with a stomach virus and was away from her desk for most of the week." The motion came to the Court's attention on July 17, 2003, the day after the requested extended deadline; however, the application had still not been filed by July 16, 2003, the requested extended deadline. Accordingly, the request for an extension to July 16, 2003 was denied as moot. On July 17, 2003, Attorney Lafayette filed still another motion to reset the date, this time a motion to allow a late filing of his fee application, together with the fee application itself. The stated grounds seeking approval of the late filing were the same as in the previous request for extension. At a hearing on August 15, 2003, the Court allowed the late filing, but indicated its intention to "consider [the] untimeliness as a factor in its determination of the amount to be allowed."

The fee application, now before the Court, seeks total compensation in the sum of $4,199.73, of which $3,068.50 remains unpaid. Of the sum sought to be allowed, $3,753.50 is the component sought for professional services. Attorney Lafayette claims that he devoted 11.3 hours, at rates ranging from $310 to $320 per hour, and paralegals

14

devoted 2.9 hours at rates ranging from $35 to $65 per hour. An additional sum of $446.23 was sought for reimbursement of expenses. Attorney Lafayette reported payments received in the amount of $685.00

A hearing on the fee application was held on August 27, 2003. There, counsel for the Chapter 13 trustee complained again about the rate charged by Attorney Lafayette ($310-$320 per hour). She also reminded the Court that Attorney Lafayette had not timely complied with this Court's order of March 12, 2003, and specifically noted that, according to Attorney Lafayette's time entries for the relevant period contained in his fee application, he had met twice with the debtor in April of 2003, but no effort was made to amend the plan until after receipt of this Court's show cause order of June 3, 2003. In response, Attorney Lafayette raised his dental and other medical issues and suggested that they caused him to fall behind in his work. Because medical concerns were raised by Attorney Lafayette at the earlier evidentiary hearing conducted on July 22, 2003 in connection with this Court's Case Management Order, more fully described below, the Court inquired as to whether Attorney Lafayette was satisfied to have his testimony there incorporated for these purposes. Attorney Lafayette agreed, and the fee application was taken under advisement to be determined in connection with those cases included in the Case Management Order.

### E.    Peter and Denise Caci

Peter and Denise Caci filed a Chapter 13 case on December 3, 2002 and were represented by Attorney Lafayette. Shortly thereafter, Attorney Lafayette filed a "Disclosure of Attorney Compensation for Debtor" (the "Caci Fee Disclosure"). The Caci

15

Fee Disclosure was similar in form and content to the LaFrance, Oyola, Rolon and Daigneault Fee Disclosures, containing the same infirmities and the same hourly rate. The retainer was here represented to be $500, against a fee of $3,000 with the same conditions set forth in the LaFrance, Oyola, Rolon and Daigneault Fee Disclosures.

On January 15, 2003, the Chapter 13 trustee conducted the section 341 meeting of creditors. She reportedly expressed concern with respect to the value of the debtors' residence, and asked them to produce a broker's price opinion in order to verify its value. When nothing had been forwarded within a month thereafter, the Chapter 13 trustee filed a motion to dismiss the case. Attorney Lafayette then filed an opposition to which was attached an alleged home inspection report prepared by a John Dangutis.

Dangutis had been retained by the debtors prepetition in order to complete a home inspection report. The report was prepared for potential litigation against another home inspector who (the debtors said) had negligently completed another home inspection report for them in conjunction with their purchase of the property. The upshot of Dangutis's report was that the property required substantial repairs which should have been discovered by the first inspector. The Dangutis report was offered to the Chapter 13 trustee and the Court to support the valuation of the property proffered by the debtors. The report was signed by Dangutis as "inspector" with a license number of "115425."

The problem was that Dangutis was not a licensed inspector. Nor did he enjoy the referenced license number, which turned out to be that of some other form of licensure. Attorney Lafayette did not disclose the foregoing to the debtors, although he knew these facts full well. Indeed, Dangutis was another of Attorney Lafayette's Chapter 13 debtor clients, Dangutis and/or his spouse having been debtors in this Court on five (5) occasions

16

since 1995, each time represented by Attorney Lafayette. In Dangutis's then current filing, in which again Attorney Lafayette served as debtor's counsel, Dangutis represented his income as derived solely from social security, veteran's disability, and contributions from his daughter. Dangutis was not in the business of doing home inspections.

On June 12, 2003, the Chapter 13 trustee filed a "Motion . . . for Order Requiring Counsel to the Debtor to Disgorge Fees and to File a Fee Application." That motion recited the foregoing events. No opposition was filed, but the Court nonetheless set the motion for hearing on July 11, 2003. The motion was thereafter continued to September 12, 2003 for an evidentiary hearing, and Attorney Lafayette was ordered to file a fee application on or before August 8, 2003. On August 11, 2003, Attorney Lafayette filed a motion to continue the evidentiary hearing on the grounds that he had pending matters scheduled before another bankruptcy judge on August 12, 2003. But the evidentiary hearing was not scheduled for *August* 12, 2003; it was scheduled for *September* 12, 2003. The motion to continue was accordingly denied. And, not unexpectedly, the fee application, due on August 8, 2003, was filed on August 15, 2003, seven (7) days late.

In the meantime, the debtors had made an important decision. They decided to sell their home and move to Florida. And it was important that they complete the process by early August of 2003, so that they could arrange for critical special needs services for their child in time for the upcoming school year. Both Attorney Lafayette and his paralegal told Peter Caci that the debtors should find a broker, get a purchaser and then contact Attorney Lafayette's office. Attorney Lafayette never told the debtors, however, that the retention of such a broker required advance court approval. On May 3, 2003, the debtors executed an "Exclusive Right to Sell Listing Agreement" with Gravel Real Estate ("Gravel"). By early

17

June, Gravel had been successful in locating a prospective buyer. On June 8, 2003, the debtors accepted a written "Offer to Purchase Real Estate" (the "Purchase Offer"); and on June 18, 2003, executed a purchase and sale agreement with a closing date of July 31, 2003. Gravel and the debtors tried for an extended period of time to get Attorney Lafayette to seek court approval, and finally extracted a promise from the aforesaid paralegal to get Attorney Lafayette to execute the necessary request.[13]

On June 18, 2003, Attorney Lafayette for the first time filed an application to employ Gravel in order to "marketing(sic) and procure buyers." But it was too late. The Purchase Offer, attached to the motion, showed that the buyer had already been procured and failed to set forth any reason for the failure to seek earlier approval of the broker. Accordingly, employment of the broker now satisfied no standard permitted under In re Jarvis, 53 F.3d 415 (1st Cir. 1995), and the Court denied the request.

On June 30, 2003, Attorney Lafayette finally filed a motion seeking to sell the property, requesting expedited determination. But the motion failed to comply with MLRB 2002-5(A) (Contents of Notices of Sale) and Official Local Form 2(A)(Notice of Intended Private Sale of Estate Property). Accordingly, the motion to sell was denied without prejudice.

Not for two weeks did Attorney Lafayette respond, despite being told that the debtors were desperate to move to Florida prior to August 10, 2003 in order to arrange the special needs services for their child. On July 14, 2004, after telling Peter Caci that the

---

[13]According to the debtors, the agreement "sat on [the paralegal's] desk" for an extended period of time without action, while the debtors called repeatedly asking that Attorney Lafayette obtain the requisite approval. The paralegal told Mr. Caci that she had been unable to get Mr. Attorney Lafayette to file it. (Evidentiary hearing, June 28, 2004; testimony of Peter Caci).

18

errors incident to the failed motion to sell were the result of the "personal problems of his paralegal," Attorney Lafayette filed renewed motions to sell the property, for shortened notice, and for the retention of Gravel as broker. These motions were deficient for a myriad of reasons, among them that the employment motion (really one of reconsideration) was filed late, one of the attached documents appeared to be altered without notice to the court, notice to creditors was insufficient, and a recently extended closing date was not disclosed. Still, the motions were set for emergency hearing on July 28, 2003 at which the Court took evidence from a representative from Gravel and from Mr. Caci. Based on that evidence presented, the Court relieved Attorney Lafayette of his responsibilities as counsel for the debtors. That role was thereafter ably filled by attorney Joseph Collins as an accommodation to the debtors and as a courtesy to the Court. The following day, the Court allowed both the motion to sell and the motion to employ Gravel, notwithstanding their deficiencies, having specifically found that the Jarvis standard of "extraordinary circumstances" was met by the "profound incompetence" of the debtors' previous counsel.

Attorney Lafayette filed a fee application, now before the Court, on August 15, 2003. It seeks total compensation in the sum of $5,320.61 (as of August 15, 2003), of which $4,609.61 remains unpaid. Of the sum sought to be allowed, $4,755.00 is the component sought for professional services. Attorney Lafayette claims he devoted 13.5 hours, at the rate of $320 per hour, and paralegals devoted 7.2 hours at rates ranging from $35 to $65 per hour. An additional sum of $565.61 was sought for reimbursement of expenses. Attorney Lafayette reported payments received in the amount of $711.00.

On August 29, 2004, the Chapter 13 trustee and the United States trustee filed their objections to the fee application. The Chapter 13 trustee complained with respect to

19

Attorney Lafayette's role in connection with the Dangutis employment and the fiasco relating to the sale of the property, as well as the requested hourly rate of $320 per hour.[14] The United States trustee concurred with the Chapter 13 trustee's complaints.

An evidentiary hearing was held on the fee application on September 12, 2003. The Chapter 13 trustee and the United States trustee renewed their previously filed complaints with respect to the services rendered by Attorney Lafayette. They also reminded the Court that: (1) after a hearing in the Dangutis bankruptcy case, it had authorized the Chapter 13 trustee to disburse to Mr. and Ms. Caci the sum of $200, representing the fee Dangutis had improperly charged to the debtors for the home inspection; and (2) Attorney Lafayette had not only opposed that order before the court, but had filed an appeal of the order while still representing the Mr. and Ms. Caci. With respect to his services in the Caci case, Attorney Lafayette blamed problems in the case on a non-material error in a position taken by the Chapter 13 trustee early in the case. The fee application was thereafter taken under advisement.

## F.    Mark and Angela Bennett

Mark and Angela Bennett filed a Chapter 13 case on January 6, 2003 and were represented by Attorney Lafayette. Simultaneously, Attorney Lafayette filed a "Disclosure of Attorney Compensation for Debtor" (the "Bennett Fee Disclosure"). The Bennett Fee Disclosure was similar in form and content to the LaFrance, Oyola, Rolon, Daigneault and

---

[14]The Court chooses not to go into other objections by the Chapter 13 trustee with respect to specific time entries in light of the ultimate disallowance of all compensation on other grounds.

20

Caci Fee Disclosures, containing the same infirmities and the same hourly rate. The retainer was here represented to be $500, against a fee of $3,000 with the same conditions set forth in the LaFrance, Oyola, Rolon, Daigneault and Caci Fee Disclosures.

On March 14, 2003, the Chapter 13 trustee filed an objection to the debtors' exemptions, as well as a motion seeking that Attorney Lafayette be ordered to disgorge fees. Both filings cited numerous errors in the Schedules and Chapter 13 plan. Most egregiously, Attorney Lafayette, an experienced practitioner, had combined federal and state exemptions in the debtors' Schedule C in violation of § 522(b) of the Bankruptcy Code and settled law. Further, the debtors' Schedule J included a monthly expense of $276 for the cost of monthly money orders for the plan payments. These issues were raised by the Chapter 13 trustee at the section 341 meeting on February 12, 2003, and Attorney Lafayette was requested to amend the affected Schedules. Over 30 days later, Attorney Lafayette had taken no action to remedy the issues.

On March 18, 2003, in response to the motion seeking disgorgement of his compensation, Attorney Lafayette filed a motion seeking an extension within which to respond to the Chapter 13 trustee's motion. He said he was out of Massachusetts at a continuing legal education conference with the Massachusetts Academy of Trial Attorneys and would remain there until March 24, 2003. Thereafter, he was scheduled for dental surgery for which there would be an approximately seven day recuperation. He requested that the response deadline be extended to April 11, 2003. Attorney Lafayette's request for extension was allowed. But Attorney Lafayette did not meet the extended deadline. On April 16, 2003, Attorney Lafayette filed a motion asking the Court to allow his response to be filed late. He informed the Court therein that he had been ill on account of a tooth

21

abscess and was scheduled to have dental surgery on April 25, 2003. That motion was allowed on April 18, 2003 and the underlying motion to disgorge was set for hearing on May 14, 2003.

In the meantime, the Chapter 13 trustee's objection to the debtor's exemptions came on for hearing on April 16, 2003. It now being more than 60 days from the initial request of the Chapter 13 trustee that Attorney Lafayette cure the obvious infirmities in Schedule C, the Court sustained the Chapter 13 trustee's objection and ordered the debtors to file an amended Schedule C within seven days. The Court also ordered Attorney Lafayette to file a fee application with 14 days, the Court's intention being to have that fee application available for examination at the hearing on the Chapter 13 trustee's motion to disgorge Attorney Lafayette's compensation on May 14, 2003. Finally, the Court issued an order to show cause why the case should not be dismissed or sanctions imposed on account of the debtors' failure to file an amended plan (on account of an unrelated problem) as required by the court's order of March 10, 2003.

The debtors' amended Schedule C was timely filed, as was Attorney Lafayette's fee application. Both the Chapter 13 trustee and the United States trustee filed objections. The Court then set a hearing on the fee application to be heard together with the Chapter 13 trustee's motion seeking disgorgement and the show cause order on May 14, 2003. Those hearings could not go forward as scheduled, however, because Attorney Lafayette had failed to give proper notice of the hearing on his fee application. Accordingly, the

Court continued all matters to June 11, 2003 and ordered Attorney Lafayette to notice creditors forthwith.[15]

On June 11, 2003, in response to the Court's April 16 order to show cause, Attorney Lafayette reported that the delay in filing an amended plan related to unliquidated priority claims filed by taxing authorities, including the City of Springfield. While this was not a legitimate excuse for failing to timely seek an extension of the deadline for filing an amended plan, the Court ordered the debtors to file certain tax returns (by August 1, 2003) and any pleadings designed to liquidate the City of Springfield claim (by June 30, 2003). Attorney Lafayette failed to file the latter by the deadline. On July 2, 2003, Attorney Lafayette filed a motion to enlarge time to file pleadings relative to the City of Springfield claim and a motion to compel the City of Springfield to file a proof of claim. He claimed that the documents had been timely prepared but inadvertently left behind in the office when unrelated documents were filed on June 30, 2003. That request for leave to file those documents late was set for hearing on July 30, 2003. Also set for hearing that day was a request for reconsideration of an order of the court, dated June 18, 2003, granting relief from the automatic stay to Deutsche Bank National Trust Company (the "Bank") in order to conduct a foreclosure on certain property of the debtor. The bank's motion seeking that relief had gone unanswered.

On July 30, 2003, Attorney Lafayette withdrew his motion relative to the City of Springfield claim and the Court allowed the motion for reconsideration of its order granting

---

[15]The fee application and the Chapter 13 trustee's motion to disgorge were originally included in the Case Management Order, described below, but were subsequently mooted by the denial of all compensation, ordered on September 24, 2003, as further described herein.

relief from the automatic stay to the Bank, further ordering the debtors to become current on all postpetition payments to the Bank on or before August 6, 2003. In light of Attorney Lafayette's failures to meet the referenced deadlines since the filing of the last fee application, however, the Court also ordered that Attorney Lafayette update his fee application on or before August 15, 2003. It was not updated and after a hearing upon a show cause order, dated September 16, 2003, all fees were disallowed by order of September 24, 2003. Attorney Lafayette was ordered to disgorge any sums received (excluding the filing fee) to the debtors by October 1, 2003 and to file a certificate of compliance on or before October 8, 2003. Attorney Lafayette appealed that September 24, 2003 order to the United States District Court for the District of Massachusetts. The District Court subsequently affirmed by order dated April 9, 2004 (Ponsor, J.). Nevertheless, notwithstanding his failure to seek a stay pending appeal, Attorney Lafayette failed to comply with the September 24, 2003 order until after receipt of this Court's order of May 18, 2004, ordering him to show cause why he should not be found in contempt.

### G.   Stefan Davis

Stefan Davis filed a Chapter 13 case on January 10, 2003 and was represented by Attorney Lafayette. Shortly thereafter, Attorney Lafayette filed a "Disclosure of Attorney Compensation for Debtor" (the "Davis Fee Disclosure"). The Disclosure was similar in form and content to the LaFrance, Oyola, Rolon, Daigneault, Caci and Bennett Fee Disclosures, containing the same infirmities and the same hourly rate. The retainer was here represented to be $115, against a fee of $3,000 with the same conditions set forth in the LaFrance, Oyola, Rolon, Daigneault, Caci and Bennett Fee Disclosures.

24

On March 12, 2003, the Chapter 13 trustee conducted the Section 341 meeting. There, she complained of numerous discrepancies in the schedules and plan. For example, the plan listed a certain Lisa Russell as the holder of a mortgage on the debtor's residence, but then proceeded to describe a cram-down of her undersecured claim in an automobile. In fact, argued the Chapter 13 trustee, the automobile was unencumbered; and if Ms. Russell held a mortgage on the residence, the claim could not be modified consistent with 11 U.S.C. § 1322(b)(2). Also, while the plan provided for payment of priority claims in the amount of $6,500, the schedules listed priority claims in the amount of $9,100. The Chapter 13 trustee asked Attorney Lafayette to amend the plan to correct these obvious errors. He failed to do so. On April 11, 2003, the Chapter 13 trustee filed a motion to dismiss. As grounds for dismissal, the Chapter 13 trustee alleged:

> 4. The Debtor has failed to file an amended plan as requested by the trustee at the meeting. The trustee submits that the failure of the Debtor to file and provide these documents is an unreasonable delay by the Debtor that is prejudicial to creditors and constitutes grounds for dismissing this case pursuant to § 1307(c)(1) of the Code.

Attorney Lafayette responded promptly with the debtor's response. All of the Chapter 13 trustee's allegations set forth in the motion to dismiss were admitted. He noted that that the "matter is curable in an amended plan." Perhaps so, but Attorney Lafayette did not file one.

On April 23, 2003, the Chapter 13 trustee followed with a "Motion . . . for Order Requiring Counsel to Disgorge Retainer and to Require the Filing of a Fee Application." The motion complained again of Attorney Lafayette's failure to properly respond to the necessary modification requests by the Chapter 13 trustee.

25

The Chapter 13 trustee's motion to dismiss the case was heard on May 7, 2003. On that date, the Court continued the motion to June 11, 2003, and ordered the debtor to file an amended Chapter 13 plan on or before June 4, 2003. The debtor did not comply. On June 9, 2003, five (5) days after the court ordered deadline, Attorney Lafayette filed a motion to extend the deadline. As grounds, Attorney Lafayette claimed that the plan was not filed because of ongoing negotiations with the Internal Revenue Service with respect to its claim. Attorney Lafayette provided no information as to why he had neglected to seek an extension of the deadline before it had run. Accordingly, the Court continued the hearing on the Chapter 13 trustee's motion to dismiss to July 11, 2003, but reserved judgment on the "propriety" of the late filed motion to extend the deadline for filing the amended plan. By July 11, 2003, the Chapter 13 trustee had lost interest in her motion to dismiss and withdrew the motion. An amended plan had been filed on June 18, 2003 and modified to her liking.

The Chapter 13 trustee's motion seeking that Attorney Lafayette's fee be disgorged/ disallowed was heard on May 14, 2003. On that date, the Court continued the hearing, but ordered Attorney Lafayette to file a fee application on or before June 11, 2003. The instant application was filed on May 29, 2003 and the Chapter 13 trustee filed her opposition. That opposition complained that:

1.  the initial plan filed by Attorney Lafayette contained the errors referenced above, which errors were not rectified in a reasonably prompt fashion;

2.  Attorney Lafayette's application sought compensation for amending the plan ($1,043.50) and for preparing his fee application ($564.50), neither of which would have been necessary but for his own errors;

3.  certain services were not properly itemized in 1/10 hours as required by MLRB 2016-1(a)(1)(B);

26

4.    the fee application, the plan and the Fee Disclosure reflect discrepant amounts for the retainer and the amounts due;

5.    the fee application does not include the prepetition fee agreement required by MLRB 2016-1(a)(1)(D); and

6.    the hourly rate charged by Attorney Lafayette ($320) is excessive, particularly in light of the Bernier case, in which Judge Rosenthal found $225.00 to be a reasonable hourly rate for Attorney Lafayette in Chapter 13 cases.[16]

On June 11, 2003, this Court took the fee application under advisement, ultimately

including it in this Court's Case Management Order, more fully described below.

## II.    THE CASE MANAGEMENT ORDER

In light of the many objections filed by the Chapter 13 trustee to Attorney Lafayette's

fee applications in the LaFrance, Oyola, Rolon, Bennett and Davis cases, the Court issued,

on June 24, 2003, a Case Management Order. In that Order, the Court noted that:

A.    in each of the referenced cases, Attorney Lafayette had filed, at the direction of this Court, a fee application;

B.    in response to each of the said fee applications, the Chapter 13 Trustee and/or the United States Trustee objected citing various actions or failures to act by Attorney Lafayette in his representation of the applicable debtor (the "Service Objections");

C.    Attorney Lafayette had not disputed the facts underlying the Service Objections;

D.    this Court took judicial notice of similar fact patterns in other cases in which Attorney Lafayette had served as counsel;

---

[16]In re Bernier, No. 02-46102-JBR (February 27, 2003) (unpublished). Later, Judge Rosenthal confirmed that ruling in In re Martinez, No. 02-45992-JBR (June 26, 2003) (unpublished).

27

E. the Chapter 13 Trustee and the United States Trustee had also challenged the amount of the hourly compensation rate sought by Attorney Lafayette (the "Rate Objections"); and

F. Attorney Lafayette and the United States Trustee had each requested an opportunity to submit a memorandum of law in connection with the Rate Objections.

Pursuant to the Case Management Order, the Court:

A. set for evidentiary hearing on July 22, 2003, the fee applications in each of those cases; and

B. ordered Attorney Lafayette to show cause why he should not be further

ordered to:

1. file, within 120 days of the date of this Court's order, a fee application in each pending Chapter 7 and 13 case in the District of Massachusetts in which he seeks further compensation from a debtor or a further distribution from a Chapter 13 trustee, said fee application(s) to be filed before the bankruptcy judge assigned to each such case; and

2. until further order of this Court, deposit any fee thereafter received from any Chapter 13 or 7 debtor in the District of Massachusetts in his client trust account and refrain from disbursing those funds until a fee application permitting such disbursement is granted by the bankruptcy judge assigned to such case;

C. provided Attorney Lafayette until July 8, 2003 in which to file any Pre-Trial Memorandum; and the United States Trustee and the Chapter 13 Trustee until July 18, 2003 to file any response thereto.

The United States trustee filed its Pre-Trial Memorandum on July 8, 2003. Attorney

Lafayette failed to file a Pre-Trial Memorandum. On July 16, 2003, six (6) days prior to the

evidentiary hearing, Attorney Lafayette filed a "Motion to Continue Hearing." As grounds,

Attorney Lafayette stated that he was scheduled during that time to attend a conference

in San Francisco with the Association of Trial Lawyers of America. The motion was denied.

28

Two days later, Attorney Lafayette filed an "Emergency Second Motion to Reschedule Hearing." This time, Attorney Lafayette sought a continuance of the hearing on the grounds that he had another tooth abscess for which he had been seen by a dentist and prescribed treatment and medication. The medication, he represented, had a tendency to render him less alert than "he would like to be." And the condition caused him to have a "ringing in the ears." The motion was denied.

The evidentiary hearing was held on July 22, 2003. But just prior thereto, Attorney Lafayette filed a "Motion to Present Newly Discovered Evidence Related to Counsel's Physical/Dental Health Issues" and a "Motion to Impound So Much of the Files That Related to Counsel Physical/Dental Health Issues." Attorney Lafayette complained that for several years he had suffered from a painful back condition, exacerbated, he said, from a recent fall just outside of the entrance to the federal court. He sought to present this information to the Court (together with information previously presented with respect to his dental condition) as an explanation for his service failures to his clients, and sought a continuance so that the nature of his back condition (which had been recently retested) could be properly diagnosed. The motion seeking leave to present information with respect Attorney Lafayette's back condition was allowed, but the request seeking a continuance to present further evidence with respect thereto was denied for the reason that the diagnosis of Attorney Lafayette's condition was irrelevant to the issues before the Court.[17] The motion to impound was denied for essentially the same reason.

---

[17]Neither the Court nor the Chapter 13 trustee or United States trustee were challenging the validity of Attorney Lafayette's medical or dental problems; accordingly, a full diagnosis to explain their source was not relevant.

29

At Attorney Lafayette's request, counsel to the United States trustee spoke first at trial. He argued first that a reasonable range of hourly rates for Chapter 13 practitioners in this district was from $150 to $225 per hour, and that it was Attorney Lafayette's burden to show otherwise. He then addressed the various excuses raised by Attorney Lafayette with respect to his service failures to the instant debtors, characterizing them as sloppy and careless. Further, he noted that, if credence were to be given to Attorney Lafayette's various claims of medical disability, he had serious concerns about such an attorney continuing to render services in a state of diminished capacity. He expressed fears for the legal well-being of all consumer debtors under Attorney Lafayette's care.

Attorney Lafayette responded to the question of the applicable lodestar rate in two ways. First, he argued that any prospective setting of the lodestar rate in future cases was "highly unconstitutional,"[18] because it deprived him of "an opportunity to earn a living and to process the law associated with those cases." Second, although Attorney Lafayette maintained on the one hand that he "accepted" the rulings in Grenier and Martinez, *infra*, particularly with respect to whether a typical Chapter 13 case consumed an average of 10 hours of attorney work, he quarreled with the rate set in those cases. He argued that the court had miscounted in calculating his rate at $225. Considering the $2,500 fee set in MBLR 13-7(b), discussed in greater detail below, the court should, according to Attorney Lafayette, have found an appropriate hourly rate for Chapter 13 practitioners to be $250 ($2,500 divided by 10 hours). Attorney Lafayette said he could not offer further insight into

---

[18]He did not cite the applicable provision of the United States Constitution.

the lodestar rate issue. He said that he found his research into the area "mind-boggling;" and, accordingly, he would rest this question with this Court's discretion.

In response to those portions of the Case Management Order that implicated MBLR 13-7(b), Attorney Lafayette turned again to his physical ailments. He insisted that those ailments were the cause of his service failures, yet denied that his use of medications left him with diminished capacity to represent his clients. And, while the fee applications now before the Court reflect significant time devoted by his paralegals, he claimed that he does not "delegate much of Chapter 13 to the assistants, other than stuffing envelopes and mailing. . . ."

In final argument, counsel for the United States trustee and the Chapter 13 trustee asked the Court to suspend - with respect to Attorney Lafayette - the automatic compensation provisions set forth under MLRB 13-7(b). The Chapter 13 trustee also suggested that the Court consider suspending Attorney Lafayette from practice before the Court for a limited period of time.

## III.   DISCUSSION

### A.   The Standards for Compensation in Chapter 13 Cases

The standards for allowance of compensation to professionals generally are set forth in § 330 of the Bankruptcy Code. 11 U.S.C. § 330 (2004). With respect to Chapter 13 cases, § 330 specifically provides:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy

31

> case based on a consideration of the benefit and necessity of such services
> to the debtor and the other factors set forth in this section.

11 U.S.C. §330(a)(4)(B) (2004).

And §330 further instructs with respect to compensation under any chapter:

> In determining the amount of reasonable compensation to be awarded, the court
> shall consider the nature, the extent, and the value of such services, taking into
> account all relevant factors, including -
>
> > (A) the time spent on such services;
> >
> > (B) the rates charged for such services;
> >
> > (C) whether the services were necessary to the administration of, or
> > beneficial at the time at which the service was rendered toward the
> > completion of, a case under this title;
> >
> > (D) whether the services were performed within a reasonable amount of time
> > commensurate with the complexity, importance, and nature of the problem,
> > issue, or task addressed; and
> >
> > (E) whether the compensation is reasonable based on the customary
> > compensation charged by comparably skilled practitioners in cases other
> > than cases under this title.

11 U.S.C. §330(a)(3) (2004).

In this Circuit, the methodology employed to evaluate the reasonableness of

compensation for professionals is the "lodestar" approach. See Boston and Maine Corp.

v. Moore, 776 F.2d 2, 6-7 (1st Cir.1985); Furtado v. Bishop, 635 F.2d 915, 920 (1st

Cir.1980); Garb v. Marshall (In re Narragansett Clothing Company), 210 B.R. 493, 497 (1st

Cir. BAP 1997); In re Bank of New England Corp., 142 B.R. 584, 586 (D. Mass. 1992); In

re Act Manufacturing, 281 B.R. 468, 479 (Bankr. D. Mass. 2002); In re Anolik, 207 B.R. 34,

n.11 (Bankr. D. Mass.1997); In re 1095 Commonwealth Ave. Corp., 204 B.R. 284, 290

(Bankr. D. Mass. 1997); In re Smuggler's Beach Properties, Inc., 149 B.R. 740, 743 (Bankr.

D. Mass. 1993); In re First Software Corp., 79 B.R. 108, 112-13 (Bankr. D. Mass.1987); In

re WHET, Inc., 58 B.R. 278, 285 (Bankr. D. Mass.1986). Courts first develop a point of

reference by determining a reasonable billing rate and then multiplying it by the number of hours which appropriate tasks should have consumed. Narragansett Clothing Company, 210 B.R. at 497.

The lodestar rate ought to take into account the type of work performed, who performed it, the expertise that it required, and when it was undertaken. Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950-51 (1st Cir. 1984). The court must "consider prevailing market rates in determining the lodestar, based on usual and customary rates in the jurisdiction . . . . No presumption exists that a professional is entitled to the amount he or she requests." Narragansett Clothing Company, 210 B.R. at 498-99. Once determined, the applicable rate is multiplied by the hours reported, after those which are duplicative, unproductive, excessive, or otherwise unnecessary are subtracted. Grendel's Den, Inc. v. Larkin, 749 F.2d at 950.

Finally, the lodestar is adjusted by various factors, including:

(1) the time and labor required; (2) the novelty and difficulty of the questions presented by the case; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time pressures imposed by the client or the circumstances; (8) the amount involved and results obtained as a result of the attorney's services; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Smuggler's Beach Properties, Inc., 149 B.R. at 743; In re First Software Corporation at 112.

Anolik, 207 B.R. at n.11.

The Court has an independent judicial responsibility to review the fees of professionals, even in the absence of an objection by a party in interest. In re First

33

Software Corporation, 149 B.R. at 111. The burden of proof is on the party requesting a compensation award.   Narragansett Clothing Company 210 B.R. at 498.   Where no evidence is presented to establish the customary rate, the court must rely "upon its own expertise in judging market rates for professionals in the jurisdiction in which it sits." Id. at 499.

Measuring proper compensation in Chapter 13 cases presents special challenges. Section 330(a)(4)(B) specifically directs the Court's attention to the welfare of the debtor rather than that of the bankruptcy estate.  11 U.S.C. §330(a)(4)(B) (2004).  Furthermore, the economics of practice under Chapter 13 is different from those under Chapters 7 or 11. In Chapter 7 cases, counsel to the individual debtor is paid by the debtor, but is likely to be confronted with a finite set of problems (e.g., relating to exemptions and discharge) to be overcome within a rather limited period of time. In Chapter 11 cases, counsel to the debtor in possession may be called upon to perform extensive services, but can be paid from funds of the estate.  See Lamie v. United States Trustee, 540 U.S. ---, 124 S. Ct. 1023 (2004); 11 U.S.C. § 1106; §327.  But in Chapter 13, while the amount of available funds to pay for services may be small, the debtor's needs may be extensive.   Proper representation of a Chapter 13 debtor requires the time and patience to identify the source of the debtor's financial difficulty in order to draft a reorganization plan that best addresses the debtor's problems.  Once drafted, the reorganization plan may have to be negotiated with creditors and the Chapter 13 trustee, and may have to be amended, sometimes more than one time.  Disputes as to the propriety of the plan's terms may spill out into the courtroom; and, once disputes are resolved, further plan modification may be required in order to achieve confirmation.  And after all of that, the debtor may default and require

34

further legal assistance. Plan defaults, as well as defaults in the monthly payment of home mortgages, are commonplace.

The resources available to fund the typical Chapter 13 case come from the Chapter 13 debtor, an individual with a self-evident inability to raise substantial funds. The economics of a Chapter 13 practice therefore require that counsel to the Chapter 13 debtor use appropriate techniques in order to reduce the costs of doing business. The development of a practice with some measure of volume is commonplace; the employment of paralegals to reduce the average billable rate and the introduction of computer technology to reduce work time is often a necessity. Yet all of the business efficiencies must be fashioned so that they do not interfere with the high quality of legal services which Chapter 13 debtors deserve and the bankruptcy courts expect of all attorneys who practice before them.

The focus that §330(a)(4)(B) places upon the benefit of legal services to the Chapter 13 debtor, together with the unique economics of the Chapter 13 practice, has encouraged courts to seek efficiencies as well. While not abandoning the lodestar methodology entirely, some courts have adopted a " no look", "presumptive" or "initial fixed" fee standard to be applied to the "routine tasks" attendant to most Chapter 13 cases. See, e.g., In re Eliapo, 298 B.R. 392, 399-400 (9th Cir. BAP 2003)(collecting cases); In re Argento, 282 B.R. 108, 116-17 (Bankr. D. Mass. 2002); see also, Keith M. Lundin, Chapter 13 Bankruptcy, 3d Ed., Debtors' Attorney's Fees § 294-18 - 294-24. Typically, this method assumes that tasks common to all Chapter 13 cases will be covered by a standard fee promulgated in a local rule or guideline. Additional services relating to any unique

35

complexities of the case are then measured through some variant of the lodestar methodology.

The bankruptcy judges in the District of Massachusetts have retained the lodestar approach in evaluating fees for services rendered to debtors in Chapter 13 cases and have chosen not to adopt a fixed or presumptive fee. Often misunderstood, MLRB 13-7(b) is a rule of procedure rather than one of substance. It provides:

Unless otherwise ordered by the Court, if debtor's counsel's total compensation prior to confirmation of a plan is $2,500 or less, the disclosure of the compensation in the Rule 2016(b) Statement shall be sufficient notwithstanding compensation for post confirmation services in amount not exceeding $500, and the filing of an itemized application for compensation shall be excused, unless the Court orders otherwise.

The message of Rule 13-7(b) is clear: if the fees of counsel to the debtor in a Chapter 13 case do not exceed $2,500 for prepetition services and $500 for postpetition services, then the attorney need neither amend a lesser disclosure in the attorney's Fed. R. Bankr. P. 2016(b) Statement, nor file a fee application in order to be entitled to payment - unless the Court orders differently. The assumption underlying Rule 13-7(b) is not that $3,000 is some form of floor or ceiling for appropriate compensation for debtor's counsel in a Chapter 13 case. Rather, the rule recognizes that it is so unlikely that the Court will disallow compensation of $3,000 or less when an attorney renders beneficial legal services to a Chapter 13 debtor that the preparation of a fee application would waste judicial resources and drive up costs to a debtor whose funds are better spent on a dividend to creditors. The Rule contains the fail-safe clause "[u]nless otherwise ordered by the Court" in order to ensure its underlying premise: that Rule 13-7(b) should have effect only where the Court believes it likely that the debtor receive beneficial services from debtor's counsel.

36

B.    The Various Fee Applications

Consideration of the instant fee applications begins with the selection of the lodestar rate. The United States trustee and the Chapter 13 trustee urge the Court to adopt the billing rate of $225 per hour selected in Grenier and Martinez. Attorney Lafayette's responses are are both inconsistent and inexplicable. While billing in amounts over $300 in each of the instant cases, he testified at the evidentiary hearing in connection with the Case Management Order first that he accepted the Grenier and Martinez rulings, then that they were wrong, and then that he found the inquiry "mind-boggling." More important, Attorney Lafayette offers absolutely no evidence to support any rate at all. In the absence of evidence to the contrary, this Court is left to take judicial notice of the average billing rates in Chapter 13 cases in the Western Division of the District of Massachusetts. This Court agrees with Grenier and Martinez that the average billing rate for services in Chapter 13 cases in the City of Worcester, Massachusetts is in the range of $150-225 per hour, and believes it no different in the four most western counties of this district. But this Court respectfully disagrees with the decision in those cases to place Attorney Lafayette at the upper end of that range. Careless and sloppy work, from which Attorney Lafayette's clients repeatedly required court intervention and rescue, suggest either that Attorney Lafayette's skill level is not consistent with that of the average practitioner or that he is not sufficiently motivated to bring it to that level. Accordingly, this Court sets Attorney Lafayette's lodestar rate at $150 per hour for each of the instant fee applications.

Identification of the number of appropriate billable hours and application of adjusting factors with respect to each of the fee applications now before the court requires more detailed scrutiny.

37

In LaFrance, as noted by the Chapter 13 trustee, the listing of time (and attendant division of labor between Attorney Lafayette and his paralegals) makes little sense. Further, the identification of the amount of the retainer is contradictory with other filings made by Attorney Lafayette. Attorneys must scrupulously maintain the accuracy of their time entries and their billing records. This Court's review of Attorney Lafayette's fee application confirms the Chapter 13 trustee's concerns. Attorney Lafayette, who had the burden to do so, failed to respond to those concerns either in writing or at the evidentiary hearing. Affording Attorney Lafayette with perhaps more benefit of the doubt than deserved, the Court will not reduce the number of hours represented in the fee application, but will acknowledge the problems cited by the Chapter 13 trustee by reducing the final allowance by the sum of $500. The resulting calculation is that Attorney Lafayette spent 12.8 hours at the lodestar rate of $150, for a total of $1,920, to which should be added $176.50 for services rendered by paralegals and $254.16 for reimbursable out of pocket costs.[19] From this amount, the Court will reduce the application by $500 for a total of $1850.66, against which Attorney Lafayette received an initial retainer from the client in the amount of $600.[20]

Review of the remaining cases does not require similar mathematical analysis. There, the deficiencies in service are so substantial as to render moot a review of time

---

[19]Neither the Chapter 13 trustee nor the United States trustee has challenged the rate charged by Attorney Lafayette for work performed by his paralegals or his requests for reimbursement of out of pocket costs.

[20]The Court has not, on this occasion, further reduced the award based on the confusing language in the Rule 2016(b) Statement filed by Attorney Lafayette in this and the following cases. That language should be altered in future cases to avoid reductions in compensation.

spent and disbursements incurred. In Oyola, Attorney Lafayette twice filed Schedule C offerings which substantially exceeded any conceivable exemption, and ignored the Chapter 13 trustee's requests for repair until she was forced to bring her objection to the Court. In Rolon, Attorney Lafayette filed the case in Chapter 7, notwithstanding the fact that the debtor could not obtain a discharge there because of the recency of another Chapter 7 discharge in a case in which Attorney Lafayette had also served as debtor's counsel. And, on conversion of the case to Chapter 13, Attorney Lafayette repeatedly filed inaccurate schedules, and even missed a deadline that, for a time, caused the case to be dismissed. In Daigneault, Attorney Lafayette failed to timely amend an obviously unconfirmable plan and then, after the Chapter 13 trustee was forced to file an objection thereto, failed to timely comply with this Court's order to amend that plan. He even missed the deadline for filing his own request for compensation. In Caci, Attorney Lafayette failed to provide a proper disclosure to the debtors with respect to the identity and qualifications of a recommended "expert;" failed also to disclose that he represented that "expert" in another matter; represented that "expert" in a contest in which the debtors here had a conflicting interest; failed to properly advise the debtors with respect to the need to approve the employment of their broker; failed to timely respond to their request that a sale of their property be approved; failed to timely seek reconsideration of orders; failed to prepare appropriate notices to creditors; and failed to timely advise the Court either that a closing date for the sale had been postponed or that a document offered to the Court in one motion was an altered version from that presented in another. Finally, in Davis, Attorney Lafayette made various errors on the debtor's schedules and plan, failed to timely respond

39

to the Chapter 13 trustee's request that he rectify the errors, and failed to timely comply with this Court's order to the same effect.[21]

Attorney Lafayette offers excuses for each of the foregoing lapses. He cites either the disabilities of his computer software, temporary illnesses of his paralegals, or chronic illnesses of his own. None of these justify what Attorney Lafayette has done (or not done) in these cases. The products of computer software must always be reviewed by an attorney who depends on the program. Clients hire attorneys, not computers. Notwithstanding the obvious benefits which computers afford, they have no fiduciary duty toward those who rely upon them; attorneys do. As for paralegals, they do from time to time get sick, or take vacation, or sever their relationship with attorneys. When that happens, an attorney must timely replace those services with those of another paralegal of sufficient skill or step in to do that work him or herself (for which the attorney is presumably more than capable). And when, for whatever reason, that is not possible, an attorney is obliged to seek a continuance before, not after, a Court-ordered deadline has run.

The illness of an attorney presents special concerns, since those services are not easily replaced either on a temporary basis or for an extended period of time. When an attorney has a temporary illness, other attorneys in the case have a duty of courtesy to one another, and the court has a duty to ensure that the illness does not affect the

---

[21] The Court does not here list Bennett, since Attorney Lafayette's request for compensation has already been denied for untimeliness, and that denial has been affirmed by the United States District Court for the District of Massachusetts. The Court would note, however, that, in the Bennett case, Attorney Lafayette also made various errors in the schedules and plan (including listing both federal and state exemptions in Schedule C) and failed to rectify those errors in a timely manner.

40

administration of justice. Where time is not of the essence, continuances ought to be granted or other accommodations made. But where illness become a daily or weekly excuse for repeated errors made over an extended period of time and which threaten to sacrifice a client's economic well-being, courtesy is no longer a factor. An attorney may simply not permit his or her client to suffer legal harm, even where the excuse is the attorney's long term illness. Many attorneys suffer from long-term or chronic illnesses and manage quite well to represent their clients without sacrificing the rights of those clients. An attorney suffering from such an illness must obtain appropriate assistance or supports to avoid reasonable risks of harm to clients, and, failing that, withdraw from ongoing representations and decline to take on new cases.[22]

This Court finds it hard to believe, and does not believe, that most (if any) of the various errors described in each of the above referenced cases are the result of the various excuses proffered by Attorney Lafayette. But even if the excuses are true, they are not sufficient to overlook the sloppy, careless and unprofessional actions taken by Attorney Lafayette in each of the referenced cases. Clients come to attorneys for a service. Where the service is not provided, or provided poorly, they should not be required to pay for the service, regardless of the validity of the excuse offered. Accordingly, compensation in each of the Oyola, Rolon, Daigneault, Caci and Davis cases will be disallowed and all payments received, except for filing fees, will be ordered disgorged.

_____

[22]During the year 2002, Attorney Lafayette filed 316 cases in this district (approximately 26 per month); in the year 2003, 260 cases (approximately 22 per month); and for the first five months of 2004, 118 cases(approximately 24 per month). Furthermore, during this period of time, this Court has frequently granted continuances to permit Attorney Lafayette to travel to far distant locations with bar groups, something not usually within the ability of a person limited by illness.

41

## C. MLRB 13-7(b)

The judges of this district have promulgated MLRB 13-7(b) with the assumption that an attorney relying thereon is generally rendering beneficial legal services to his or her clients. For the reasons set forth above, this Court can no longer maintain that assumption in cases in which Attorney Lafayette represents the debtor. Accordingly, the Court will order that MLRB 13-7(b) shall not apply in such cases. Absent an allowed fee application, Attorney Lafayette shall not be permitted to use fees received hereafter from clients in bankruptcy cases,[23] nor shall the Chapter 13 trustee be permitted to pay fees to Attorney Lafayette. That order will be reviewed at various intervals to determine its ongoing necessity.

In no way should these actions be misinterpreted as attorney discipline. Whether Attorney Lafayette should be practicing before this Court, or any other, is left for the determination of those bodies who have the jurisdiction to say so. See Sheridan v. Michels (In re Sheridan), 362 F.3d 96 (1st Cir. 2004). In Sheridan, the First Circuit Court of Appeals reversed the Bankruptcy Appellate Panel; which had affirmed a bankruptcy judge's ruling suspending an attorney from practice before the Court. The First Circuit held that where a disciplinary proceeding is omnibus in nature, does not arise in the context of an open bankruptcy case, is predicated upon ethical rule violations proscribed by state law and has only a remote or overly speculative effect upon closed bankruptcy cases, a bankruptcy judge has only non-core jurisdiction . Id. at 111-12. None of those conditions are presented here. This is not a disciplinary proceeding that will preclude Attorney Lafayette

---

[23]Until fees are allowed, funds received from clients shall be held in Attorney Lafayette's IOLTA account, as would be the practice in the absence of MLRB 13-7(b).

from practice before the bankruptcy courts of this district. The instant issues arise in the context of open cases. The review of fees paid by a debtor to his or her counsel arise under bankruptcy law, most notably 11 U.S.C. § 327 and 329. And the decisions made here will likely positively impact both the debtors now before the court and those that will come before the court hereafter.

Said in perhaps too summary a fashion, the holding of Sheridan is that the Massachusetts bankruptcy courts do not have the power to suspend or disbar attorneys from practice because they do not have the power to admit attorneys to practice. The latter is the province of the United States District Court. But Congress gave to bankruptcy courts the power to determine the proper compensation of attorneys who represent debtors. 11 U.S.C. §§ 327, 329 (2004). And the method by which requests for compensation will be presented to the Court is well within the core jurisdiction of bankruptcy courts. 28 U.S.C. §§ 157(b)(2)(A) and (B). The bankruptcy judges of this district were not required to promulgate MLRB §13-7(b). They could have required applications for compensation to be presented by all attorneys who represent debtors in Chapter 13 cases. By the same token, no judge is precluded from using the saving language contained in that rule ("Unless otherwise ordered by the court") to restrict its use when the assumption underlying the rule (beneficial services to debtors) is not evident.

## IV.  CONCLUSION

By order of even date, this Court shall order that:

1.   Attorney Lafayette file within 14 days from the entry of such order an updated statement in each of the LaFrance, Oyola, Rolon, Daigneault, Caci and Davis cases listing:

43

          a.     the dates and amounts of all payments received from the debtors and/or the Chapter 13 trustee; and

          b.     the allocation of any payment received to fees and expenses; and

2.     the Chapter 13 trustee file within 7 days thereafter a response to the foregoing statements <u>only</u> if her records of payment differ from those of Attorney Lafayette;

3.     within 45 days of the entry of the said order, Attorney Lafayette disgorge to each of debtors in the <u>Oyola</u>, <u>Rolon</u>, <u>Daigneault</u>, <u>Caci</u> and <u>Davis</u> cases all payments received from the debtors and/or the Chapter 13 trustee, excluding only the filing fee, and file with this Court within 7 days thereafter a certificate of compliance together with a copy of each check;

4.     within 30 days of the entry of the said order, Attorney Lafayette disgorge to the debtor in the <u>LaFrance</u> case so much of the payments received from the debtor and/or the Chapter 13 trustee which may exceed the amount allowed herein, and shall file within 7 days thereafter a certificate of compliance together with a copy of his check to the debtor, if any;

5.     within 120 days of the entry of the said order, Attorney Lafayette file a fee application in each Chapter 7 and 13 case in the District of Massachusetts in which he appears on behalf of a debtor, but only if he has a claim for unpaid compensation or expense reimbursement either against the debtor or the estate;

6.     Attorney Lafayette's claim for unpaid compensation or expense reimbursement be deemed waived in any case in respect to which he fails to comply with paragraph 5 above; and

7.     on and after the entry of this order, the Chapter 13 trustee not make any payments to Attorney Lafayette on account of any request for compensation or reimbursement of expenses absent a court order;

8.     on and after the entry of this order, Attorney Lafayette deposit any payment received from a Chapter 13 or 7 debtor in the District of Massachusetts in his client trust account and refrain from disbursing those funds until and unless a fee application permitting such disbursement is granted by the bankruptcy judge assigned to such case, unless such judge orders otherwise; and

9.      the terms set forth in paragraphs 7 and 8 hereof be reviewed by this Court at intervals set by the court in its sole discretion, the first such review to occur approximately 12 months herefrom.

DATED:      June 10, 2004

Henry J. Boroff
United States Bankruptcy Judge

cc:     Francis Lafayette, Esq.
        Denise Pappalardo, Chapter 13 trustee
        United States trustee
        Debtors